UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Vens Briceno Jackson,

                    Plaintiff,                    Case No. 18-cv-3294 (MJD/LIB)

          v.                                      **ORDER AND**
                                          **REPORT AND RECOMMENDATION**

United States of America, et al.,

                    Defendants.

This matter comes before the undersigned United States Magistrate Judge upon Plaintiff's Motion to Stay Proceedings, [Docket No. 23]; Defendants' Motion to Dismiss, [Docket No. 26]; and Plaintiff's Motion to Proceed from Abroad. [Docket No. 36]. The parties' Motions were referred to the undersigned by the Honorable Michael J. Davis. (Order [Docket No. 32]). After the establishment and completion of a briefing schedule on the parties' Motions, the Court took the parties' Motions under advisement on the parties' written submissions.

For the reasons discussed herein, Plaintiff's Motion to Stay Proceedings, [Docket No. 23], is **DENIED as moot**, and Plaintiff's Motion to Proceed from Abroad, [Docket No. 36], is **DENIED as moot**.

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 26], be **GRANTED**.

I.    **Background**[1]

At the time of the allegations at issue in the present action, Plaintiff was in the custody of the Federal Bureau of Prisons. (Compl. [Docket No. 1]).

On November 25, 2015, Plaintiff filed a complaint in the United States District Court, Southern District of New York. Jackson v. USA, 7:15-cv-9347 (CS) Compl. [Docket No. 2] (S.D.N.Y. Nov. 25, 2015) (hereinafter "2015 Complaint"). At the time he initiated that 2015 action, he was incarcerated at the Federal Correctional Institution in Otisville, New York (hereinafter "FCI Otisville"). See, Id. Plaintiff's 2015 Complaint named the United States of America as the sole defendant, and it alleged as follows:

> 6. While confined at FDC-Miami, Plaintiff informed medical personnel that he has a prior injury above his left ankle from a motorcycle accident that was vulnerable to re-injury.
>
> 7. Medical personnel at MDC-Miami issued an order providing that shackles [were] not to be placed around Plaintiff's ankles when he was transported to court or elsewhere.
>
> 8. While confined at FDC-Miami, Plaintiff was never shackled when taken to court, nor when leaving on airlift transport to the Federal Transfer Center in Oklahoma City, Oklahoma ("FTC-Oklahoma City") after being sentences to serve a term of imprisonment in the BOP.
>
> 9. Sometime in June 2013 (exact date unknown), Plaintiff was required to wear shackles for several hours as part of his anticipated airlift transport to the Metropolitan Detention Center in Brooklyn, New York (MDC-Brooklyn"). The airlift did not depart as planned, however, and Plaintiff was returned to confinement at FTC-Oklahoma City.
>
> 10. Sometime in July 2013 (exact date unknown), Plaintiff was again required to wear shackles for several hours as part of his airlift transport to MDC-Brooklyn.

---

[1] The facts contained in this background section are derived from Plaintiff's Amended Complaint, [Docket No. 8], as well as, matters of public record, including judicial records and Plaintiff's Public Information Inmate Data. Generally, in evaluating a complaint, materials outside the pleading cannot be considered on a motion to dismiss. See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a court "may consider the pleadings themselves, exhibits attached to the pleadings, and matters of public record." See, e.g., Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079).

This time, the airlift departed as planned, and Plaintiff later arrived at MDC-Brooklyn.

11. On or about July 31, 2013, Plaintiff was transported by bus from MDC-Brooklyn to the Federal Correctional Institution in Otisville, New York ("FCI-Otisville"). For the trip, Plaintiff was again required to wear shackles for several hours.

12. Each time Plaintiff was required to wear shackles, he advised one or more BOP employees that he had a prior ankle injury and medical order against shackling. However, Plaintiff's requests to not be shackled were ignored or denied.

13. As a result of being required to wear shackles, the site on Plaintiff's earlier ankle injury deteriorated into an open wound.

14. While confined at FCI-Otisville, Plaintiff has sought and received medical attention for the wound, which has never fully healed. On multiple occasions, Plaintiff has requested further evaluation and treatment by a specialist or surgeon, but BOP medical personnel have refused to make such a referral, instead insisting on continuing with attempts to treat the wound at the institutional level.

15. The area of the wound has, at time, become infected. In addition, Plaintiff suffers ongoing pain, discomfort, and psychological stress as a result of the wound not healing or being otherwise resolved by medical treatment.

Jackson v. USA, 7:15-cv-9347 (CS) 2015 Compl. [Docket No. 2] at 2–3 (S.D.N.Y. Nov. 25, 2015). Although Plaintiff filed his 2015 Complaint pro se, he was subsequently represented by counsel.

On the basis of those factual allegations, Plaintiff's 2015 Complaint raised a claim pursuant to the Federal Tort Claims Act alleging that "BOP employees were negligent and breached their duty to ensure the safekeeping and care of Plaintiff by requiring him to wear shackles for extended periods of time on several occasions, where such employees knew or reasonable should have known that Plaintiff has a prior injury to his left ankle," as well as, "a medical order against shackling." Id. at 4. Plaintiff further alleged "BOP employees were negligent and breached their duty to ensure the safekeeping and care of Plaintiff by failing to

provide him with adequate and proper medical care comporting with applicable standards of care." Id. Specifically, Plaintiff alleged that "the BOP and its employees ha[d] failed to provide adequate and proper medical treatment for the wound on Plaintiff's left ankle that has not healed properly despite more than two years of evaluation and treatment by medical personnel at FCI-Otisville," and as for the treatment that was provided, Plaintiff alleged the BOP employees "committed medical malpractice." Id. at 4–5. As relief, Plaintiff sought monetary damages in the amount of $250,000. Id.

In February 2016, Plaintiff was transferred from FCI Otisville to the Federal Medical Center in Rochester, Minnesota (hereinafter "FMC Rochester"). (Amended Compl., [Docket No. 8], at 4). Medical personnel at FMC Rochester continued to treat Plaintiff's ankle injury; however, Plaintiff continued to perceive that medical care as inadequate. Specifically, Plaintiff takes issue with the fact that he "was not referred to a wound care specialist until more than two years after arriving at FMC Rochester, and then only after he filed an administrative complaint with the warden." (Id.).

On November 9, 2017, Plaintiff's 2015 Complaint was dismissed with prejudice upon the parties entering into a settlement agreement to dispose of Plaintiff's claim in his 2015 Complaint. Jackson v. USA, 7:15-cv-9347 (CS) Stipulation and Order or Settlement and Dismissal (S.D.N.Y. Nov. 9, 2017). In relevant part, that Settlement Agreement provides as follows:

> WHEREAS, Plaintiff Vens Jackson (the "Plaintiff") filed this action asserting claims against defendant the United States of America (the "United States") under the Federal Tort Claims Act . . . (the "FTCA") alleging negligence related to being shackled while in transit to various Bureau of Prison facilities and medical malpractice in connection with treatment of a pre-existing ankle wound (the "Action");

> WHEREAS, Plaintiff and the United States have reached a settlement of the FTCA claim;

4

IT IS HEREBY FURTHER STIPULATED AND AGREED, by and between the Plaintiff and the United States that the following terms and conditions apply:

1. The Action is dismissed with prejudice as to the United States, without interest, costs, expenses, disbursements, or fees to any party.

2. The United States agrees to pay to Plaintiff the total sum of eighty-five thousand dollars ($85,000) (the "Settlement Amount") in connection with the FTCA Claim. The Settlement Amount shall be in full settlement of any and all claims, demands, rights, and causes of action that the Plaintiff now has or may hereafter acquire against the United States, arising from or related to the facts, events, and circumstances giving rise to the Action, and any claims incident thereto. Plaintiff understands that taxes will not be withheld from the Settlement Amount.

3. Plaintiff agrees to accept the Settlement Amount in full settlement and satisfaction of any and all claims and demands that he and his heirs, executors, successors in interest, administrators, or assigns may have or hereafter acquire against the United States, or any of its present or former departments, agencies, agents, officials, or employees, arising from or related to the facts, events, and circumstances, giving rise to this Action, and any claims incident thereto.

4. Plaintiff hereby expressly releases and forever discharges the United States, including its present and former departments, agencies, agents, officials, and employees, from any and all claims and liability arising directly or indirectly from the facts, events, and circumstances giving rise to this Action, and any claims incident thereto.

Jackson v. USA, 7:15-cv-9347 (CS) Stipulation and Order or Settlement and Dismissal (S.D.N.Y. Nov. 9, 2017). The Settlement Agreement became effective upon approval by the Federal District Court for the Southern District of New York on November 9, 2017. Id.

On June 28, 2018, while at FMC-Rochester, Plaintiff completed an administrative tort claim form alleging the date and day of the accident as "June 2013–Presently [sic]." (Exhibit F, [Docket No. 29-3], at 6).[2] On the "Basis of Claim" portion of the form Plaintiff wrote: "Failure to to [sic] evaluate infection on left ankle and delay in treating infection caused by failure to schedule examination by a wound care specialist. Transported from various federal institutions

---

[2] Plaintiff's administrative claim was assigned claim number TRT-NCR-2018-06248. (Id.).

while shackle [sic] rubbing on infected wound." (Exhibit F, [Docket No. 29-3], at 6). On another

portion of the form, Plaintiff wrote: "Negligence in delay and improper treating of wound on left

ankle causing infection and long term injury." (Exhibit F, [Docket No. 29-3], at 6).

In a letter Plaintiff appears to have attached to this administrative tort claim form,

Plaintiff wrote that the BOP "medical staff breached its duty to provide adequate care and

safekeeping by way of customs, practices, and procedures denying adequate medical case. . . .

The negligence was from the delay and improper treating of a wound on his left ankle, causing

an infection, and long term injury." (Exhibit F, [Docket No. 29-3], at 8). In addition, Plaintiff's

attached letter, in relevant part, provides as follows:

> Plaintiff contends that between 2012 and 2013, the relevant time period of his medical dilemma, the BOP was deliberately indifferent to a substantial risk of serious harm to him by failing to resolve his medical dilemma, and by specifically delaying for 58-months scheduling an examination by a wound care specialist. He asserts that during his detention at the Federal Detention Center (FDC) Miami, Florida, the BOP became aware of plaintiff's deforms left ankle. During the relevant time period of 2013 while detained in the Oklahoma transfer center, Oklahoma City, Oklahoma after leaving Otisville, New York the BOP never attempted to probe the wounds, or take a culture of plaintiff's wound, after which would have alerted the medical staff that his left ankle was infected and or may have infections with swelling. The BOP medical staff never attempted to address the wound to promote healing by removing secretion that causes infections. The BOP did apply dressing to the wound and put too much pressure which resulted in drying the lower left leg and ankle. During plaintiff's transfer from FDC Miami to Oklahoma transfer center then to Otisville, N.Y. he was then transported on a very long bus and airplane ride in ankle shackles rubbing which caused infected wounds. Ultimately the rubbing of hard metal caused an infection hole to my left ankle. It took 58-months before BOP medical staff decided to take plaintiff to a wound care specialist at the Mayo Clinic hospital. Despite, having a no shackle medical idle, it was ignored by the United States Marshals and the BOP during transfer.
>
> . . .
>
> The BOP medical staff failed to properly diagnose and treat his left ankle. Specifically, he states that the BOP medical staff did not take a culture of his wound, or attempt to treat the wound while applying dressing with too much pressure. A culture was not taken until 2016, 32-months after being transferred to

Federal Medical Center Rochester. He was approved for physical therapy, but was not examined by a wound care specialist until 2018. Despite, being repeatedly told that the only way to properly determine the nature and extent of his left ankle infections was with a wound care specialist at the Mayo Clinic hospital, the BOP neglected examination several times. These malpractice claims are based on delay in treatment and improper evaluation by the BOP medical staff's failure of taking a culture of the wound. Plaintiff claims would have given a more accurate diagnosis and led to a different course of treatment that would have avoided infection and pain he continues to feel in his left ankle. The delay and/or treatment itself falls short of the standard medical care and this caused him ongoing pain and suffering.

(Exhibit F, [Docket No. 29-3], at 8–10).

On August 29, 2018, the agency attorney reviewing Plaintiff's administrative tort claim sent Plaintiff a letter requesting additional information about his claim. (Exhibit G [Docket No. 29-4]). Specifically, the letter instructed Plaintiff to provide the following information:

1. List with specificity every physical condition or injury that is included in your request for $1,250,000.00. Please include the date and place of care.

2. List staff who were involved in this incident and/or other staff with knowledge or involvement regarding the allegations raised in this matter.

3. Describe the treatment you received for each physical condition for which you requested treatment subsequent to the injury.

(Id.).

Plaintiff responded to the request for information in a letter dated September 4, 2018.

(Exhibit H, [Docket No. 29-4], at 5). Plaintiff's responsive letter provided as follows:

I [am] hereby informing you that my left deform[ed] ankle sustained its injuries from wearing of foot shackles, [d]espite the medical idol indicat[ing] I have a deform[ed] ankle. The foot shackles caused the wound, which lead [sic] to an infection resulting [in] numerous years of medical care. I have been suffering with pain and infection affecting sleep hours. Sadly, to this date my left deform[ed] ankle ha[s] not healed. My medical records can provide you with all requested information.

(Id.).

7

In a letter dated October 1, 2018, the Office of Regional Counsel denied Plaintiff's administrative tort claim. (Exhibit I, [Docket No. 29-4], at 9). This letter informed Plaintiff that the denial of his claim was a final denial under 28 C.F.R. § 14.9. (Exhibit I, [Docket No. 29-4], at 9).

Plaintiff initiated the present action on November 30, 2018, by filing his pro se Complaint, [Docket No. 1], while still at FMC-Rochester. Thereafter, on January 7, 2019, Plaintiff was transferred from FMC Rochester to the FCI Otisville. (Bush Decl., [Docket No. 29], at ¶ 12).

On April 1, 2019, Plaintiff, again acting pro se, filed his now-operative Amended Complaint. [Docket No. 8]. In his Amended Complaint, Plaintiff, in relevant part, alleges as follows:

> 1. This is a lawsuit seeking monetary damages for claims alleging the plaintiff has received inadequate medical care while confined in the Federal Bureau of Prisons ("BOP").
>
> . . .
>
> 4. With respect to Plaintiff's claim under the FTCA, he exhausted administrative remedies by submitting a Claim for Damage, Injury, or Death to the BOP. It was assigned claim number TRT-NDR-2018-06248 and denied on October 1, 2018.
>
>  . . .
>
> 10. On May 14, 2012, Jackson was arrested on federal criminal charges and admitted to the Federal Detention Center in Miami, Florida ("MDC Miami") pending resolution of same.
>
> 11. Prior to his arrest, Jackson suffered an injury to his left ankle, which left it somewhat deformed, and the area above it vulnerable to things such as tearing of the skin and infection.
>
> 12. While confined at MDC Miami, Jackson was seen by medical professionals and received an order directing that he not be required to wear shackles when taken to court to other locations while in custody.

13. On November 30, 2012, Jackson was sentenced to serve a term of ten year imprisonment in the BOP.

14. On May 2013, Jackson was placed in transit within the federal prisoner transportation system, eventually arriving at his designated facility, the Federal Correctional Institution in Otisville, New York ("FCI Otisville"), in July 2013.

15. On each occasion Jackson was transported from one location to another while in transit, he was required to wear shackles by employees of the BOP and/or the United Stated Marshals Service, despite the no shackle order previously issued by MDC Miami medical personnel.

16. As a result of having to wear shackles for extended periods on several occasions, the area above Jackson's left ankle became irritated, leading to infection, loss of tissue, and the formation of a hole (hereafter referred to as "the wound").

17. For more than thirty months, Jackson remained at FCI Otisville, during which time he was regularly seen by medical personnel regarding the wound. The wound became infected and was treated with antibiotics on several occasions. Medical personnel also regularly bandaged the wound. However, Jackson was never referred to a wound specialist for further evaluation and treatment. Instead, he was taken one time to see a plastic surgeon, who indicated he was not a candidate for plastic surgery because of the age of the wound. Finally, medical personnel referred Jackson for transfer [sic] to the Federal Medical Center in Rochester, Minnesota ("FMC Rochester").

18. On February 7, 2016, Jackson was transferred was transferred from FCI Otisville to FMC Rochester. For the next approximately two years, Jackson received no significant additional diagnosis or treatment of the wound, despite being seen regularly by Elker, Feda, and York. Again, medical personnel regularly bandaged the wound, but Jackson was not referred to a wound care specialist until more than two years after arriving at FMC Rochester, and then only after he filed an administrative complaint with the Warden. When Jackson was taken to the Mayo Clinic Hospital for consultation with the wound care specialist, Feda came along and frequently interrupted Jackson's discussion with the specialist. Feda eventually asked the specialist to step out of the examination room to have a private discussion. When the returned, Jackson was informed that it would be recommended that his same treatment be continued with Feda as the primary care provider, and that he be seen by the specialist for further evaluation in six to eight weeks. On or about June 1, 2018, Jackson learned from another medical staff member (name unknown) that his most recent blood test revealed the wound was infected with two different types of viruses, and that was likely why it was not healing. When Jackson next met with Feda and asked about the blood test results, she initially denied any abnormalities were present. However, after Jackson advised Feda that he had already been told the blood test showed

viruses present, she admitted that was true and gave Jackson honey-based bands and cream to treat the wound. Jackson was never taken to the wound specialist for the recommended follow-up evaluation. Instead, Jackson was quickly transferred back to FCI Otisville shortly after the initial complaint was filed in this case.

19. As a direct and proximate result of innumerable delays and errors related to Jackson's medical care for the wound, he has suffered considerable pain, emotional distress, and physical injury, including shrinkage of his left ankle and atrophy of the muscles in that area.

(Amended Compl., [Docket No. 8], at 1–5).

On the basis of those factual allegations, Plaintiff now alleges two causes of action. (Id. at 5–7).

For his first cause of action in the present case, Plaintiff alleges a claim against Defendant the United States of America pursuant to the Federal Tort Claims Act. (Id.). In support of that claim, Plaintiff alleges that the "United States breached its duty to provide Jackson with adequate medical care within the applicable standards of care while he was confined in the BOP." (Id.). Specifically, he "alleges that the BOP medical personnel named in [his] amended complaint were negligent and engaged in medical malpractice in the course of providing treatment for the wound on his left ankle." (Id.).

For his second cause of action in the present case, Plaintiff alleges a Bivens[3] claim against Defendants Elker, Feda, and York, in their individual capacities. (See, Amended Compl. [Docket No. 8]). In support of that Bivens claims, Plaintiff asserts that "[w]hile confined at FMC Rochester, [he] was deprived of adequate medical care and subject to cruel and unusual punishment . . . by the deliberate indifference of Elker, Feda, and York when they were tasked with providing" Plaintiff "with medical care for his left ankle wound." (Id. at 6–7).  Plaintiff asserts that the "deliberate indifference was exhibited in many ways, including the failure to promptly refer" him "for evaluation by a wound specialist, by interfering with that evaluation,

---

[3] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

and by failing to discover in a timely manner the viruses eventually detected in the wound, which were likely the cause of it not healing and subjecting" Plaintiff "to significant unnecessary pain and suffering." (Id. at 7).

On August 1, 2019, Plaintiff filed a Motion to Stay Proceedings, [Docket No. 23], seeking an Order of this Court staying the present proceedings for a period of sixty to ninety days. Specifically, Plaintiff sought the stay to secure legal counsel of record as he was informed that as "a party bringing a claim of medical negligence" he "must produce an affidavit stating that a qualified healthcare provider has reviewed the case and concluded that the defendant medical providers deviated from the applicable standard of care, and by that action caused injury to Plaintiff." (Id.).[4]

On August 6, 2019, Plaintiff was released from the custody of the Bureau of Prisons. (Bush Decl., [Docket No. 29], at ¶ 12).

On August 12, 2019, Defendants filed their "Motion to Dismiss or in the Alternative for Summary Judgment" (hereinafter "Motion to Dismiss"). [Docket No. 26]. Defendants' Motion to Dismiss was referred to the undersigned by the Honorable Michael J. Davis. (Order [Docket No. 32]).

Thereafter, the undersigned established a briefing schedule on Defendants' Motion to Dismiss. (Order [Docket No. 33]). In that Order, the Court informed the parties that it would take Plaintiff's Motion to Stay and Defendants' Motion to Dismiss under advisement on the parties' written submissions upon the completion of the established briefing schedule. (Order [Docket No 33]).

---

[4] Plaintiff's Motion, [Docket No. 23], also makes reference to his previous Motion for Referral to the Federal Bar Association's Pro Se Project. [Docket No. 18]. Through a previous Order, [Docket No. 33], the undersigned denied Plaintiff's request to be referred to the District of Minnesota's Federal Bar Association's Pro Se Project. Accordingly, the Court does not further address that previously denied request.

On September 10, 2019, Plaintiff filed his Motion to Proceed from Abroad. [Docket No. 36]. In his Motion, Plaintiff asserts that upon his release from the custody of the BOP he was transferred to "immigration officers," detained at "an immigration facility at Bergyn [sic] County Jail" for a period of approximately thirty days during which time he was unable to "receive mail" or "use a phone," and subsequently "deported immediately after to his home country (Honduras)." (Plf.'s Mot. [Docket No. 36]). On that basis, Plaintiff request the Court "grant [him the] opportunity to provide [an] Affidavit stating that a qualified healthcare provider" from Honduras "has reviewed this case, and concluded that U.S. Bureau of Prisons medical providers deviated from the applicable standard of care and by that action caused injury to plaintiff." (Id.).[5]

## II.    Standards of Review

Federal courts are courts of limited jurisdiction. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998). "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." Id. (internal quotations and citations omitted). To invoke federal question jurisdiction, a plaintiff must plead a cause of action arising under federal law or the Constitution. 28 U.S.C. § 1331. A complaint states a federal cause of action when it appears on the face of a well-pleaded complaint. Oglala Sioux Tribe v. C&W Enterp., Inc., 487 F.3d 1129, 1131 (8th Cir. 2007).

"A court does not obtain subject-matter jurisdiction just because a plaintiff raises a federal question in his or her complaint. If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." Biscanin v. Merrill Lynch &

---

[5] Plaintiff's Motion, [Docket No. 36], also makes reference to his previous request to be referred to the District of Minnesota's Federal Bar Association's Pro Se Project; however, as already discussed above, the undersigned previously denied that request. (Order [Docket No. 33]). Accordingly, the Court does not further address that previously denied request.

Co., Inc., 407 F.3d 905, 907 (8th Cir. 2005) (internal citations omitted) (citing Hagans v. Lavin, 415 U.S. 528, 537–38 (1974)). In other words, merely because a plaintiff states in the complaint that the Court has subject matter jurisdiction does not make it so. It is the burden of the party asserting jurisdiction to prove that jurisdiction exists. VS Ltd. P'ship. v. Department of Hous. & Urban Dev., 235 F.3d 1109, 112 (8th Cir. 2000).

"A court must dismiss an action over which it lacks subject matter jurisdiction." Pomerenke v. Bird, No. 12-cv-1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a pleading for lack of subject matter jurisdiction.

Further, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, the non-moving party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–67).

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice to state a claim to relief that is plausible on its face." Carton v. General Motor

Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010) (citations and internal quotation marks omitted). In addition to accepting all of the factual allegations in the complaint as true, courts considering a Rule 12(b)(6) motion to dismiss draw all reasonable inferences in the plaintiff's favor, but courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Carton, 611 F.3d at 454 (citations omitted); see, Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81. Likewise, a Court need not accept as true wholly conclusory allegations couched as facts. Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999); see, Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004).

While the Court is required to construe the content within Plaintiff's pleadings liberally as he is proceeding pro se, plaintiff is nevertheless bound by applicable procedural and substantive law. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984). Additionally, "[t]hough pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted) see, e.g., Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal

theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

## III.    Plaintiff's Federal Tort Claims Act Cause of Action

Under 28 U.S.C. § 1346(b) of the Federal Tort Claims Act (hereinafter the "FTCA"), the United States Government may be sued as a tortfeasor. Thus, the FTCA provides an express waiver of the federal government's immunity for claims based on certain torts, including medical malpractice, committed by federal actors. United States v. Orleans, 425 U.S. 807, 813 (1976). The purpose of this waiver is "to compensate the victims of negligence in the conduct of governmental activities in circumstances like those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws." Bacon v. United States, 810 F.2d 827, 828 (8th Cir. 1987) (quoting Indian Towing Co. v. United States, 350 U.S. 61, 68–69 (1955)). The United States is the only proper defendant in an action asserting a FTCA claim. See, e.g., Knowles v. United States, 91 F.3d 1147, 1150 (8th Cir. 1996); Midland Psychiatric Assocs., Inc. v. United States, 145 F.3d 1000, 1004 (8th Cir. 1998).

In the present case, Plaintiff asserts his FTCA claim against the United States. (Amended Compl., [Docket No. 8], at 5–6). Generally, Plaintiff alleges that the actions of the BOP medical staff amount to medical malpractice, and therefore, the United States is liable under the FTCA. (See, Id.).

Defendant, the United States, argues that Plaintiff's FTCA claim is barred by the doctrine of res judicata. (Defs.' Mem. [Docket No. 27]). Specifically, Defendant the United States argues Plaintiff's present action is precluded by the Settlement Agreement in Jackson v. USA, 7:15-cv-9347 (CS) Stipulation and Order or Settlement and Dismissal (S.D.N.Y. Nov. 9, 2017).

"Res judicata is an issue of law that may be determined on a motion to dismiss." <u>Baratto v. Citizens Auto. Fin., Inc.</u>, No. 11-cv-105 (MJD/LIB), 2011 WL 3678679, at *2 (D. Minn. Aug. 1, 2011), <u>report and recommendation adopted</u>, 2011 WL 3667760 (D. Minn. Aug. 22, 2011). The facts that establish the defense of res judicata "must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matter of which the court may take judicial notice." <u>Baratto</u>, 2011 WL 3678679, at *2 (quoting <u>Rabo Agrifinance, Inc. v. Wachovia Capital Finance Corp.</u>, 2011 WL 601157, at *2 (D. Minn. Feb. 11, 2011)).

Under the doctrine of res judicate, a judgment on the merits in an earlier lawsuit bars a second suit involving the same parties based on the same underly factual circumstances. <u>See</u>, <u>Professional Management Associations, Inc. v. KPMG LLP</u>, 345 F.3d 1030, 1032 (8th Cir. 2003). The elements of res judicata are: "(i) the court that previously adjudicated the claim had jurisdiction to do so, (ii) the previous litigation resulted in a final judgment on the merits, and (iii) the previous suit involved the same cause of action between the same parties, or was based on the same nucleus of operative facts." <u>Larken, Inc. v. Wray</u>, 189 F.3d 729, 732 (8th Cir. 1999). "When the parties to a previous lawsuit agree to dismiss a claim with prejudice, such a dismissal constitutes a 'final judgment on the merits' for purposes of res judicata." <u>Id.</u>

### A. Court of Competent Jurisdiction

As noted above, on November 25, 2015, Plaintiff filed a complaint in the United States District Court, Southern District of New York. <u>Jackson v. USA</u>, 7:15-cv-9347 (CS) Compl. [Docket No. 2] (S.D.N.Y. Nov. 25, 2015) (hereinafter "2015 Complaint"). At the time he initiated that action, he was incarcerated at the Federal Correctional Institution in Otisville, New

York. See, Id. Plaintiff's 2015 Complaint names the United States of America as the sole defendant, and it raised a claim pursuant to the Federal Tort Claims Act. See, Id.

There are two types of federal subject matter jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. See, e.g., Briks v. Yeager, No. 19-cv-1 (NEB/LIB), 2019 WL 2119560, at *2 (D. Minn. May 15, 2019); Soltan v. Coburn, No. 9-cv-478 (JRT/FLN), 2009 WL 2337134, at *3 (D. Minn. July 23, 2009) (citing 28 U.S.C. §§ 1331 and 1332; One Point Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007)). Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Simply put, federal question jurisdiction is based on an action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction exists either when (1) "federal law creates the cause of action" or (2) "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. Of S. California, 463 U.S. 1, 27–28 (1983).

Plaintiff's 2015 Complaint asserted that the United States District Court for the Southern District of New York maintained subject matter jurisdiction over his 2015 Complaint on the basis of federal question jurisdiction. Because Plaintiff's 2015 Complaint raised a claim pursuant to the Federal Torts Claim Act—a federal statute—as alleged against the United States, the District Court for the Southern District of New York did in fact enjoy subject matter jurisdiction over Plaintiff's 2015 Complaint on the basis of federal question jurisdiction.

Personal jurisdiction existed over Plaintiff in the Southern District of New York for the purposes of his 2015 Complaint by virtue of his filing of the 2015 Compliant. See, Seenyur v. Van Coolidge, No. 16-cv-3832 (WMW/BRT), 2017 WL 9249431, at *4 (D. Minn. Sept. 22,

2017), report and recommendation adopted, 2018 WL 400758 (D. Minn. Jan. 12, 2018). Plaintiff does not here, nor did he in the Southern District of New York, argue that the Southern District of New York lacked personal jurisdiction over him. Similarly, Defendant, the United States, does not here, nor did it in the Southern District of New York, argue that the District Court for the Southern District of New York lacked personal jurisdiction over the United States. Personal jurisdiction existed over Defendant, the United States, in the Southern District of New York regarding Plaintiff's 2015 Complaint because Defendant, the United States, was served with a summons in that action, filed an answer, and participated in the action without challenging personal jurisdiction. See, e.g., Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990).

Accordingly, the Court finds that the District Court for the Southern District of New York was a court of competent jurisdiction to adjudicate the FTCA claim in Plaintiff's 2015 Complaint. Thus, the Court finds this element of the res judicata test to be satisfied.

## B.  Final Judgment on the Merits

As discussed above, the claim in Plaintiff's 2015 Complaint was resolved after the parties reached a Settlement Agreement, and the Court approved the parties' Settlement Agreement. See, Jackson v. USA, 7:15-cv-9347 (CS) Stipulation and Order or Settlement and Dismissal (S.D.N.Y. Nov. 9, 2017). The Settlement Agreement between the parties contained specific language that the 2015 Complaint would be dismissed with prejudice. Id. The Settlement Agreement also contained specific language providing that it was a full and final resolution of that action. See, Id. The District Court for the Southern District of New York approved the Settlement Agreement, and it dismissed Plaintiff's 2015 Complaint with prejudice on November 9, 2017.

"When the parties to a previous lawsuit agree to dismiss a claim with prejudice, such a dismissal constitutes a 'final judgment on the merits' for purposes of res judicata." Larken, Inc. v. Wray, 189 F.3d 729, 732 (8th Cir. 1999). More specifically, a settlement agreement between the parties to a previous lawsuit which includes an agreement to dismiss a claim with prejudice constitutes a final judgment on the merits for the purposes of res judicata. See, e.g., Id.; Black Clawson v. Kroenert Corp., 245 F.3d 759, 763 (8th Cir. 2001) ("Because the German court entered judgment accepting the settlement agreement and dismissing the case with prejudice, the settlement agreement has the effect of a final judgment on the merits of the case."); Frankle v. Best Buy Stores, L.P., No. 8-cv-5501 (JRT/JJG), 2015 WL 506265, at *3 (D. Minn. Feb. 6, 2015).

The Court-approved, November 9, 2017, Settlement Agreement Plaintiff entered into, with the assistance of counsel, represents a final judgment on the merits of the claim and issues raised by Plaintiff's 2015 Complaint. Thus, the Court finds that this element of the res judicate test is satisfied.

### C.  Same Nucleus of Operative Facts and Same Parties

The final element of res judicata test requires that "the previous suit involved the same cause of action between the same parties, or was based on the same nucleus of operative facts." Larken, Inc. v. Wray, 189 F.3d 729, 732 (8th Cir. 1999). "Generally, under this approach a claim is barred by res judicate if it arises out of the same nucleus of operative facts as the prior claim." Lane v. Peterson, 899 F.2d 737, 742 (8th Cir. 1990).

In the present case, the Court finds that Plaintiff's current FTCA claim before this Court is indeed based on the same nucleus of operative facts as the FTCA claim in his 2015 Complaint,

and it is alleged against the same Defendant, the United States. As described further herein, the "nucleus of operative facts" in each complaint are nearly identical.

Plaintiff's 2015 Complaint raised an FTCA claim against the United States based on Plaintiff's belief that BOP employees were negligent in requiring him to wear shackles despite a BOP "medical order against" it, as well as, his belief that BOP employees "committed medical malpractice" by negligently breaching their "duty to ensure the safekeeping and care of Plaintiff by failing to provide him with adequate and proper medical care comporting with applicable standards of care." Jackson v. USA, 7:15-cv-9347 (CS) 2015 Compl., [Docket No. 2], at 2–3 (S.D.N.Y. Nov. 25, 2015). Specifically, Plaintiff alleged that "the BOP and its employees ha[d] failed to provide adequate and proper medical treatment for the wound on Plaintiff's left ankle that has not healed properly despite more than two years of evaluation and treatment." Id.

In the present case, Plaintiff alleges an FTCA claim against Defendant, the United States, pursuant to the Federal Tort Claims Act based on his belief that the "United States breached its duty to provide [him] with adequate medical care within the applicable standards of care while he was confined in the BOP." (Amended Compl. [Docket No. 8]). Specifically, he "alleges that the BOP medical personnel named in [his] amended complaint were negligent and engaged in medical malpractice in the course of providing treatment for the wound on his left ankle." (Id.).

Plaintiff's FTCA claim in the present case is nearly identical to his FTCA claim in his 2015 Complaint. In both cases, Plaintiff seeks compensation for injuries he received when his left ankle was shackled in 2013, the perceived inadequate medical treatment he subsequently received for the injury on that ankle, and the BOP employees alleged refusal to refer Plaintiff to a specialist or surgeon for care of that ankle. On the faces of both Plaintiff's present Amended Complaint and his 2015 Complaint, it is evident to the Court that Plaintiff's 2015 Complaint

raises an FTCA claim arising out of <u>the same</u> nucleus of operative facts as the FTCA claim now at issue in his present Amended Complaint.

Plaintiff's present Amended Complaint includes factual allegations which occurred after Plaintiff filed his 2015 Complaint. (<u>See</u>, Amended Compl., [Docket No. 8], at 4–5) (discussing Plaintiff's transfer to FMC Rochester on February 7, 2016, and the medical care he received there). However, although that medical care was administered after Plaintiff initially filed his 2015 Complaint, those allegations still arise out of the same nucleus of operative facts, i.e., the BOP's subsequent medical treatment of Plaintiff's left ankle injury which injury was the result of his being shackled.

Moreover, much of the medical treatment at FMC Rochester for his ankle which Plaintiff describes in his present Amended Complaint in fact occurred <u>before</u> Plaintiff entered into the Settlement Agreement that resolved the FTCA claim in his 2015 Complaint. <u>See</u>, <u>Jackson v. USA</u>, 7:15-cv-9347 (CS) Stipulation and Order or Settlement and Dismissal (S.D.N.Y. Nov. 9, 2017). The plain language of that Settlement Agreement makes evident that it includes not only the specific claims alleged in Plaintiff's 2015 Complaint but <u>all</u> claims later arising out of that factual scenario. <u>See</u>, <u>Id.</u>

The Settlement Agreement specifically provided that the United States agreed to pay Plaintiff a certain sum of money "in <u>full settlement</u> of any and all claims, demands, rights, and causes of action that the Plaintiff now has or <u>may hereafter acquire against the United States</u>, <u>arising from or related to the facts, events, and circumstances giving rise to the Action</u>, and any claims incident thereto." <u>Id.</u> (emphasis added). The Settlement Agreement continued that Plaintiff agreed to accept the settlement amount "in <u>full settlement</u> and satisfaction of <u>any and all claims</u> and demands that he . . . may have or <u>hereafter acquire against the United States</u>, or any

of its present or former departments, agencies, agents, officials, or employees, arising from or related to the facts, events, and circumstances, giving rise to this Action, and any claims incident thereto." Id. (emphasis added). Lastly, the Settlement Agreement provided that Plaintiff "release[d] and forever discharge[d] the United States, including its present and former departments, agencies, agents, officials, and employees, from any and all claims and liability arising directly or indirectly from the facts, events, and circumstances giving rise to this Action, and any claims incident thereto." Id.

Plaintiff had been at FMC Rochester for nearly twenty-one (22) months when he entered into the Settlement Agreement which resolved the FTCA claim in Plaintiff's 2015 Complaint. Although the medical treatment at FMC Rochester of which Plaintiff now complains in his present Amended Complaint was not specifically alleged in his 2015 Complaint, it is clearly and plainly encompassed by the broad language of the Settlement Agreement which was entered into and executed. The care received at FMC-Rochester was directly related to and arose from the ankle injury at issue in Plaintiff's 2015 Complaint.

Therefore, the undersigned finds that Plaintiff's 2015 Complaint and the new FTCA claim in the present Amended Complaint involve the same parties and both arise out of the same nucleus of operative facts.[6] Accordingly, the Court finds this element of the res judicata test to also be satisfied.

---

[6] The Court notes that, as more fully described above, Plaintiff's present Amended Complaint contains factual allegations regarding Defendant Feda allegedly interrupting Plaintiff's discussion with a physician when Defendant Feda accompanied Plaintiff to an appointment with a wound care specialist, as well as, a circumstance where Defendant Feda allegedly "denied any abnormalities" in Plaintiff's blood test after Plaintiff had already been informed by another staff member that "his most recent blood test revealed the wound was infected with two different types of viruses . . . ." (Amended Compl., [Docket No. 8], at 5). To the extent Plaintiff intended these factual allegations to represent a basis for an FTCA claim, the Court would lack subject matter jurisdiction over such a claim. The FTCA "provides that an action shall not be instituted upon a claim against the United States for money damages unless the claimant has first exhausted his administrative remedies." McNeil v. United States, 5080 U.S. 106, 107 (1993). The Eighth Circuit Court of Appeals has determined that this exhaustion requirement "is a jurisdictional prerequisite to filing an FTCA action in federal district court." Mader v. United States, 654 F.3d 794,

Because <u>all</u> the prongs of the res judicata analysis are satisfied, the undersigned concludes that res judicate precludes Plaintiff's FTCA claim in the present action. Therefore, to the extent Defendants' Motion seeks an Order of this Court dismissing Plaintiff's present FTCA claim, the undersigned recommends that Defendants' Motion to Dismiss, [Docket No. 26], be **GRANTED**, and that the present FTCA claim be dismissed with prejudice.

## IV.    Plaintiff's <u>Bivens</u> Claims

Plaintiff purports to separately raise a <u>Bivens</u> claim against Defendants Feda, Elker, and York, in their individual capacities, alleging that these individually named Defendants violated Plaintiff's Constitutional right to adequate medical care and to be free from cruel and unusual punishment under the Eighth Amendment.

Defendants Feda and Elker argue that they are absolutely immune from suit as employees of the U.S. Public Health Services. (Defs.' Mem. [Docket No. 27]). Defendant York argues that Plaintiff's <u>Bivens</u> action as alleged against her fails to state a claim upon which relief may be granted.  (<u>Id.</u>).

"A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors." <u>Aldaco v. Holder</u>, No. 10-cv-590 (JRT/LIB), 2011 WL 825624, at *3 (D. Minn. Jan. 7, 2011) (citing <u>Bivens</u>, 403 U.S. at 395–97). "A <u>Bivens</u> claim allows a plaintiff to bring an action for money damages against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. A

---

807 (8th Cir. 2011). Therefore, where exhaustion has not occurred FTCA claims must be dismissed "for want of subject-matter jurisdiction." <u>Id.</u> Plaintiff asserts that he exhausted his administrative remedies relative to his FTCA claim through administrative claim No. TRT-NCR-2018-06248. As more fully discussed above, however, Plaintiff's administrative claim No. TRT-NCR-2018-06248 does <u>not</u> include or reference any factual allegations regarding Defendant Feda accompanying Plaintiff to any wound care specialist appointment nor any factual allegations regarding any blood tests. Instead, the Court construes Plaintiff's Amended Complaint in his favor as asserting these factual allegations related to Defendant Feda in support of his <u>Bivens</u> claim which is discussed separately below.

plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law." Id. at *3.

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on persons convicted of crimes. See, Rhodes v. Chapman, 425 U.S. 337, 344–46 (1981). Any "deliberate indifference to serious medical needs of prisoners" constitutes cruel and unusual punishment, and therefore, violates the Eighth Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation and citation omitted); see, Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference from serious medical needs") (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

To demonstrate the "deliberate indifference" necessary for pleading an Eighth Amendment violation, a prisoner must show (1) that he had an objectively severe medical need, and (2) that prison officials knew of, but deliberately disregarded, that need. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir.1995).

"Deliberate indifference is akin to criminal recklessness." Drake v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006). Accordingly, a plaintiff must plead "more than negligence, more even than gross negligence." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). "Specifically, the prisoner must show both (1) that a prison official had actual knowledge that the prisoner's

24

medical condition created a substantial risk of serious harm to the prisoner's health, and (2) that the prison official failed to act reasonably to abate that risk." Baez v. Rosemack, No. 9-cv-2121 (RHK/LIB), 2011 WL 4062586, at *4 (D. Minn. Aug. 9, 2011) (citing Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir. 1997)), report and recommendation adopted, 2011 WL 4067466 (D. Minn. Sept. 13, 2011), aff'd 471 F. App'x 544 (8th Cir. 2012).

Before addressing whether or not Plaintiff's Amended Complaint alleges an Eighth Amendment violation claim upon which relief may be granted, the Court must address one threshold issue.

### A. Defendant Feda

Plaintiff alleges that Defendant Feda violated his right to be free from cruel and unusual punishment under the Eighth Amendment by being deliberately indifferent to his need to be promptly referred to a wound specialist, allegedly interfering with Plaintiff's eventual interaction with a wound specialist, and failing to discovery and disclose "viruses eventually detected in the wound." (Amended Compl., [Docket No. 8], at 7). In response, Defendant Feda asserts that she is a commissioned officer with the U.S. Public Health Services (hereinafter "PHS"), and therefore, she argues she has absolute immunity from liability in the present action. (Defs.' Mem. [Docket No. 27]).

In support of her assertion that she is a commissioned officer with the PHS, Defendant Feda filed a sworn declaration along with Defendants' Motion to Dismiss. (Feda Decl. [Docket No. 28]). That declaration provides that Defendant Feda has been a commissioned officer in the PHS since January 2005, and that she has been stationed at FMC Rochester since January 2005. (Id.). That declaration further provides that at all times relevant to the present action, all of

Defendant Feda's "actions with regard to Plaintiff were done in the performance of a medial or related function within the scope and course of [her] employment." (Id.).

In Hui v. Castaneda, 599 U.S. 799 (2010), the Supreme Court, reversing the denial of a motion to dismiss, held that PHS employees are immune from Bivens claims arising from the performance of their job-related medical duties. The Court explained that:

> This case presents the question whether 42 U.S.C. § 233(a) . . . precludes an action under Bivens, . . . against U.S. Public Health Service (PHS) personnel for constitutional violations arising out of their official duties. When federal employees are sued for damages for harms caused in the course of their employment, the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671– 2680, generally authorizes substitution of the United States as the defendant. Section 233(a) makes the FTCA remedy against the United States 'exclusive of any other civil action or proceeding' for any personal injury caused by a PHS officer or employee performing a medical or related function 'while acting within the scope of his office or employment.' Based on the plain language of § 233(a), we conclude that PHS officers and employees are not personally subject to Bivens actions for harms arising out of such conduct.

Id. at 801–02; see, Bransgaard v. U.S. Bureau of Prisons Health Service Staff, No. 5:11–CT– 3122–FL, 2012 WL 3732822 at *7 (E.D.N.C. 2012) (providing that 42 U.S.C. § 233(a) "protects commissioned Public Health Service officers and employees from being subject to suit 'for damage for personal injury . . . resulting from the performance of medical, surgical, dental, or related functions'") (quoting Hui, 599 U.S. at 805).

As noted above, Defendant Feda submitted a declaration stating that, at the time she provided medical treatment to Plaintiff at FMC Rochester she was a commissioned officer in the United States Public Health Service. (Feda Decl. [Docket No. 28]). Plaintiff's factual allegations in his Amended Complaint only involve Defendant Feda's conduct related to Plaintiff's medical care, and those allegations provide no factual basis upon which this Court could reasonably infer that Defendant Feda was taking any actions other than performing a medical function in the course and scope of her PHS employment. Accordingly, even assuming solely for the sake of

26

argument that Plaintiff's allegations of deliberate indifference regarding Defendant Feda were true, Defendant Feda, as a commissioned officer of the PHS, is entitled in her individual capacity to absolute immunity from Plaintiff's <u>Bivens</u> claim pursuant to § 233(a) because she is being sued based upon her performance of a medical function within the course and scope of her duties and employment.

Therefore, to the extent Defendants' Motion to Dismiss seeks an Order of this Court dismissing Plaintiff's <u>Bivens</u> claims as alleged individually against Defendant Feda, the undersigned recommends that Defendants' Motion to Dismiss, [Docket No. 26], be **GRANTED**,[7] and that the individual <u>Bivens</u> claim against Defendant Feda be dismissed with prejudice.

### B.  Defendants Elker and York

As previously noted, "[a] plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law." <u>Aldaco</u>, 2011 WL 825624, at *3.

To demonstrate the "deliberate indifference" necessary for pleading an Eighth Amendment violation, a prisoner must show (1) that he had an objectively severe medical need, and (2) that prison officials knew of, but deliberately disregarded, that need. <u>Jolly v. Knudsen</u>, 205 F.3d 1094, 1096 (8th Cir. 2000). "Deliberate indifference is akin to criminal recklessness." <u>Drake v. Koss</u>, 445 F.3d 1038, 1042 (8th Cir. 2006). Accordingly, a plaintiff must plead "more

---

[7] As previously noted, Defendant Elker argues that he is absolutely immune from liability in the present action because he is also a commissioned officer in the PHS; however, unlike Defendant Feda, Defendant Elker has failed to provide any declaration or other evidence in support of his assertion that he is a commissioned officer in the PHS. Defendants' memorandum in support of their Motion to Dismiss references a declaration which was to be submitted by Defendant Elker; however, the undersigned's review of the record now before the Court indicates that no such declaration was ever submitted as part of the record before the Court.

than negligence, more even than gross negligence." <u>Estate of Rosenberg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1995).

In support of his <u>Bivens</u> claim, Plaintiff alleges "[w]hile confined at FMC Rochester, [he] was deprived of adequate medical care and subject to cruel and unusual punishment . . . by the deliberate indifference of Elker . . . and York when they were tasked with providing" Plaintiff "with medical care for his left ankle wound." (Amended Compl., [Docket No. 8], at 6–7). Plaintiff asserts that the "deliberate indifference was exhibited in many ways, including the failure to promptly refer" him "for evaluation by a wound specialist, by interfering with that evaluation, and by failing to discover in a timely manner the viruses eventually detected in the wound, which were likely the cause of it not healing and subjecting" Plaintiff "to significant unnecessary pain and suffering." (<u>Id.</u> at 7).

Defendants argue that Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted. (Defs.' Mem. [Docket No. 27]). Specifically, Defendants assert that Plaintiff's Amended Complaint fails to allege any specific factual allegations concerning conduct by either Defendant Elker or Defendant York relative to Plaintiff's wound care.

As noted above, to survive a motion to dismiss based on Rule 12(b)(6) a complaint must "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556–67).

28

The factual allegations in Plaintiff's Amended Complaint relative to Defendant Elker and Defendant York fall well short of the requisite pleading standard.

Regarding Defendant Elker and Defendant York, Plaintiff makes only thread bare, generalized allegations. Plaintiff fails to even allege any personal involvement or direct participation by Defendants Elker or York in the putative constitutional violations.

The only specific factual allegations related to Defendant York or Defendant Elker is that Plaintiff "received no significant additional diagnosis or treatment of the wound, despite being seen regularly by Elker . . . and York," and although "medical personnel regularly bandaged the wound," Plaintiff "was not referred to a wound care specialist until more than two years after arriving at FMC Rochester." (Amended Compl., [Docket No. 8], at 4).

The conclusory allegation that Defendants Elker and York provided Plaintiff with some unspecified medical care over the course of the nearly three years Plaintiff was incarcerated at FMC Rochester falls well short of the level of factual allegation needed to raise Plaintiff's Eighth Amendment claim as alleged against Defendant Elker or Defendant York above the purely speculative level. See, Twombly, 550 U.S. at 555. While the allegations in Plaintiff's Amended Complaint provide that Defendant Elker and York "regularly" saw Plaintiff, presumably in their medical capacity, there are no factual allegation in the record that Defendant Elker or Defendant York participated in the medical care of Plaintiff's left ankle injury with which he presently takes issue.

Court have consistently found such vague and generalized assertions to fall well short of the type of specific factual allegation needed to raise a plaintiff's claim above the speculative level. See, e.g., Boots v. Johnson, 17-cv-3923 (DWF/LIB), 2018 WL 4443166, at *6 (D. Minn. Jan. 23, 2018), report and recommendation adopted, 2018 WL 3659018 (D. Minn. Aug. 2, 2018).

And the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555; Walker v. Barrett, 650 F.3d 1198, 1209 (8th Cir. 2011) ("[L]egal conclusions, without any supporting factual allegations, are insufficient to survive a motion to dismiss.").

In the present case, even liberally construing Plaintiff's pro se Amended Complaint, taking all the facts pled within as true, and drawing all reasonable inferences in Plaintiff's favor, the factual allegations in Plaintiff's Amended Complaint fail to state a claim upon which relief may be granted. Thus, for the foregoing reasons, in regards to Defendants Elker and York, Plaintiff has failed to plausible plead or state a claim upon which relief may be granted. See, Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007); Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 678; Carton, 611 F.3d at 454.

Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 26], seeks an Order of this Court dismissing Plaintiff's Bivens claim as alleged individually against Defendants York and Elker, the undersigned recommends that Defendants' Motion to Dismiss, [Docket No. 26], be **GRANTED** and that Plaintiff's Bivens claim as alleged against Defendants York and Elker be **DISMISSED without prejudice**.

## V.    Plaintiff's Motions. [Docket Nos. 23, 36].

As noted above, Plaintiff filed a Motion to Stay Proceedings, [Docket No. 23], seeking an Order of this Court staying the present FTCA proceedings to provide Plaintiff time to "produce an affidavit stating that a qualified healthcare provider has reviewed the [present] case and concluded that the defendant medical providers deviated from the applicable standard of care, and by that action caused injury to Plaintiff." (Plf.'s Mot. [Docket No. 23]). Plaintiff also filed a Motion to Proceed from Abroad, [Docket No. 36], requesting the Court "grant [him the]

opportunity to provide [an] Affidavit stating that a qualified healthcare provider" from Honduras "has reviewed this case, and concluded that U.S. Bureau of Prisons medical providers deviated from the applicable standard of care and by that action caused injury to plaintiff." (Plf.'s Mot. [Docket No. 36]). Plaintiff's Motions are both based on Plaintiff's belief that he is required to submit the affidavit of a medical professional before he may proceed with his FTCA claim.

FTCA claims are subject to, and governed by, the substantive law of the state in which the claim arose. 28 U.S.C. § 1346(b). Plaintiff appears to believe that the FTCA claims he is attempting to bring in this action arose in Minnesota. Therefore, Plaintiff's Motions imply his belief that his FTCA claims, including his medical malpractice claims, are governed by Minnesota state law.

Minn. Stat. § 145.682 is a Minnesota law that applies to all medical malpractice actions brought in Minnesota, including malpractice claims brought under the FTCA. See, e.g., Oslund v. United States of America, 701 F. Supp. 710 (D. Minn. 1988); Tineo v. Federal Bureau of Prisons, No. 5-cv-724 (ADM/SRN), 2005 WL 1745451, at *2 (D. Minn. July 22, 2005) ("[m]edical malpractice actions brought in Minnesota, including medical malpractice claims brought under the FTCA, are governed by Minn. Stat. § 145.682"); Garcia v. Anderson, No. 8-cv-4731 (ADM/JJG), 2009 WL 2900304, at *4 (D. Minn. Sept. 2, 2009) ("[a] federal prison inmate alleging medical negligence under the FTCA must abide by § 145.682"), report and recommendation adopted, 2010 WL 489527 (D. Minn. Feb. 4, 2010), aff'd, 402 F. App'x 150 (8th Cir. 2010).

Section 145.682 requires every plaintiff in a Minnesota medical malpractice case to furnish two affidavits in support of his or her claims. These two affidavits have been described as follows:

31

The first affidavit (expert review affidavit) must be submitted with the complaint and state that before commencing the lawsuit, plaintiff's attorney reviewed the facts of the case with a medical expert who believed that at least one defendant named in the suit deviated from the applicable standard of care and thereby injured the plaintiff . . . .

The second affidavit (expert disclosure affidavit) must be served upon the defendant within 180 days after commencement of the suit and identify each expert plaintiff intends to call at trial, disclose the substance of the facts and opinions to which the expert will testify, and provide a summary of the grounds for each opinion.

Bellecourt v. United States, 784 F. Supp. 623, 636 (D. Minn. 1992) (citing Minn. Stat. § 145.682). If a medical malpractice complainant fails to meet either one of the two affidavit requirements set forth in § 145.682, the statute provides for "mandatory dismissal."  Minn. Stat. § 145.682, subd. 6; Stroud v. Hennepin County Medical Center, 556 N.W.2d 552 (Minn. 1996); Lindberg v. Health Partners, Inc., 599 N.W.2d 572 (Minn. 1999); see, Stackhouse v. United States, No. 9-cv-839 (PJS/JSM), 2011 WL 820885, at *25 (D. Minn. Feb. 11, 2011), report and recommendation adopted, 2011 WL 778969 (D. Minn. Mar. 1, 2011).

In the present case, Plaintiff has not complied with Minn. Stat. § 145.682 because he has failed to file the affidavits required by the statute. It is because of this failure that Plaintiff now seeks a stay of these proceedings so he may find an expert to review the present case and permission to have said expert be a physician in Honduras.

However, the undersigned's independent recommendations that the present action be dismissed renders moot Plaintiff's Motions, as well as, the requests contained therein. The undersigned has recommended that Plaintiff's claims be dismissed for reasons separate and distinct from Plaintiff's failure to comply with the requirement of Minn. Stat. § 145.682.

Therefore, Plaintiff's Motion to Stay Proceedings, [Docket No. 23], is **DENIED as moot**, and Plaintiff's Motion to Proceed from Abroad, [Docket No. 36], is **DENIED as moot**.

**VI.    Conclusion**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT**:

1.  Plaintiff's Motion to Stay Proceedings, [Docket No. 23], is **DENIED as moot**; and

2.  Plaintiff's Motion to Procced from Abroad, [Docket No. 36], is **DENIED as moot**.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED THAT**:

1.  Defendants' Motion to Dismiss, [Docket No. 26], be **GRANTED**;

2.  Plaintiff's Federal Tort Claims Act claim as alleged against Defendant, the United States, be **DISMISSED with prejudice**;

3.  Plaintiff's <u>Bivens</u> claim as alleged individually against Defendant Feda be **DISMISSED with prejudice**; and

4.  Plaintiff's <u>Bivens</u> claims as alleged individually against Defendant York and Defendant Elker be **DISMISSED without prejudice**.

Dated: January 27, 2020                          s/ Leo I. Brisbois

                                                          Hon. Leo I. Brisbois
                                                          United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).